IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| TRASBIN TOBIAS CAMPBELL, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | No. 3:10-0117 |
| v. | ) | Judge Trauger |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM

Trasbin Campbell, through retained counsel, filed a First Amended Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 (Docket No. 6), to which the Government filed a response in opposition (Docket No. 18), Campbell filed a reply (Docket No. 21), and the Government filed a sur-reply (Docket No. 24). Campbell has withdrawn the claims for relief that he raised *pro se* in his original § 2255 motion, (Docket Nos. 1, 13), and he proceeds solely on the amended § 2255 motion filed by his counsel. Campbell also filed Petitioner's Motion To Establish Scheduling Order (Docket No. 23), to which the Government did not file a response. For the reasons explained below, both motions will be denied and this case will be dismissed.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 2, 2008, a federal grand jury in this District charged Campbell in a two-count Indictment with knowing possession of a firearm following a felony conviction, in violation of 18 U.S.C. §§ 922(g)(1) & 924 (Count One), and intentional possession with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) (Count Two). (*United*

1

*States v. Campbell*, Crim. No. 3:08-00001, Docket No. 1.) Campbell retained two attorneys to represent him in the criminal prosecution.

On July 21, 2008, Campbell filed a Motion To Suppress For Insufficiency Of Affidavit Given In Support Of Search Warrant And Incorporated Memorandum." (*Id.* Docket No. 16.) After the Government filed a response, this court denied the motion to suppress without an evidentiary hearing. (*Id.* Docket Nos. 19, 23.)

The Government then filed an Information Alleging Prior Conviction (21 U.S.C. § 851). (*Id.* Docket No. 26.) The Information charged that Campbell had been previously convicted of possession of over .5 grams of cocaine with intent to deliver, a Class B felony, involving conduct on or about May 15, 2002. A footnote in the Information revealed that Campbell had additional prior felony drug convictions, but that the Government alleged only one such conviction due to a plea agreement reached between the parties. As a result of the sentencing enhancement, Campbell faced a statutory mandatory minimum sentence on the pending federal drug count of not less than 20 years and not more than life imprisonment, a fine of up to $8 million, supervised release of at least 10 years, and a mandatory special assessment of $100.00.

Campbell entered into a Rule 11(c)(1)(C) plea agreement with the Government in which he offered to plead guilty to both counts of the Indictment. (*Id.* Docket No. 30.) The parties agreed that the Career Offender guideline applied, and they anticipated that the Presentence Report ("PSR") would reveal a total adjusted offense level of 34 and a criminal history category of VI, resulting in an advisory guideline sentencing range of 262 to 327 months on Count Two. The parties agreed to request a specific sentence on Count Two of 262 months of imprisonment with 10 years of supervised release, to run concurrently with a sentence on Count One of 10

years of imprisonment with 3 years of supervised release if Campbell did not qualify as an Armed Career Criminal, or 15 years of imprisonment with 5 years of supervised release if he did so qualify. The parties also agreed that the concurrent sentences on Counts One and Two would run consecutively to a state sentence.

On October 21, 2008, the court conducted a thorough Rule 11 plea colloquy with Campbell. (*Id.* Docket Nos. 29 & 46.) Campbell stated under oath that he understood the charges against him and the elements the Government would have to prove, that his counsel had discussed possible defenses with him and had completed all investigation he asked them to do, and that he was satisfied with his counsel's representation. (*Id.* Docket No. 46, Plea Hr'g Tr. at 3-4.) The court informed Campbell of the applicable statutory penalties, including the potential for a term of up to life in prison on Count Two. (Tr. at 4.) Campbell acknowledged that he read the petition to enter a plea of guilty and the plea agreement attached to it, that he discussed the documents with his lawyers, and that he understood the terms of the plea agreement. (Tr. at 6-7.)

The court went over the plea agreement with Campbell, and he agreed, among other things, that he was ready to affirm the statement of facts supporting the plea, that he understood the calculation of his advisory guideline range, that he knew his binding plea agreement called for a specific sentence of 262 months of imprisonment and 10 years of supervised release on Count Two, and that his federal sentence would run consecutively to a state sentence, if the court accepted the plea agreement. (Tr. at 7-10.) The court advised Campbell of the circumstances under which he could withdraw his guilty plea and the rights he was giving up by pleading guilty. (Tr. at 5-6, 9-12.) The court also informed Campbell that he was waiving his right to appeal any issue bearing on his guilt or the trial rights he was giving up, that he was also waiving

3

his right to appeal the sentence if the court imposed the agreed sentence, and that he was waiving his right to file a § 2255 motion on any subject except the voluntariness of his plea, prosecutorial misconduct, and ineffective assistance of trial counsel. (Tr. at 11.)

Campbell denied that anyone pressured him to enter into the plea agreement, and he reported that his mind was clear. (Tr. at 12-13.) After the Government presented the testimony of ATF Special Agent Jaime Smith, Campbell admitted that the facts as stated were true, the facts supported a finding that he was guilty of the crimes charged in the Indictment, and he was pleading guilty because he was, in fact, guilty. (Tr. at 13-20.) The court found that Campbell entered his guilty plea knowingly and voluntarily, but reserved acceptance of the Rule 11(c)(1)(C) plea agreement until sentencing. (Tr. at 21.)

The PSR reached the same advisory guideline calculation as stated in the plea agreement, so neither Campbell nor the Government filed objections to it. (Civ. No. 3:10-0117, Docket No. 18-1.) At the sentencing hearing held on February 27, 2009, the court accepted the plea petition/agreement and Campbell's guilty plea, and imposed the agreed-upon sentence. (Crim. No. 3:08-00001, Docket Nos. 39-41.) The judgment of conviction and sentence was entered on the docket on March 9, 2009. (*Id.* Docket No. 41.) On August 3, 2009, Campbell, *pro se*, filed a "Notice Of Permission To Appeal," but the Sixth Circuit dismissed the direct appeal as untimely. (*Id.* Docket Nos. 43, 45.)

Campbell filed a timely *pro se* § 2255 motion on February 4, 2010. (Civ. No. 3:10-0117, Docket No. 1.) Thereafter, on March 11, 2010, Campbell retained his present counsel to file an amended motion. (*Id.* Docket No. 6 ¶ 5.) In it, he claims that he received ineffective assistance of counsel in connection with his motion to suppress and the plea agreement negotiations. The

4

Government responds that Campbell's counsel rendered competence assistance to him and precluded him from facing a potential life sentence if convicted at jury trial.

## APPLICABLE STANDARDS

To prevail on a § 2255 motion, the movant must establish either an error of constitutional magnitude that had a substantial and injurious effect or influence on his criminal proceeding, see *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993), or the record must reflect a fundamental defect in the proceedings that inherently resulted in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 348 (1994); *United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir. 1993).

To establish ineffective assistance of counsel, the movant must show that his counsel's performance was deficient and that the deficiency prejudiced him. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Evitts v. Lucey,* 469 U.S. 387, 396 (1985). He must show that counsel made errors so serious that he or she was not functioning as the counsel guaranteed by the Sixth Amendment, and that there is a reasonable probability that the lawyer's errors prejudiced the outcome of the proceedings against him. *Strickland*, 466 U.S. at 687; *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999). A reasonable probability is one sufficient to undermine confidence in the outcome; it is a less demanding standard than "more likely than not." *Id.* A court need not address both parts of the *Strickland* test if the movant makes an insufficient showing on one. *Strickland*, 466 U.S. at 697.

The Supreme Court has cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct

5

the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

The *Strickland* standard for evaluating claims of ineffective assistance of counsel at trial applies to guilty plea hearings as well. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). The movant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *See id.* at 59.

Under Rule 8(a) of the Rules Governing Section 2255 Proceedings, the court "must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." The movant is not entitled to an evidentiary hearing if the § 2255 motion and the record of the case conclusively show that he is not entitled to relief. *See Green v. United States*, 65 F.3d 546, 548 (6th Cir. 1995). Finally, when the trial judge also hears the collateral proceedings, as is the case here, that judge may rely on her recollection of the criminal proceedings in ruling on the collateral attack. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996).

## **ANALYSIS**

Campbell acknowledges that his trial counsel filed a motion to suppress the fruits of the search warrant executed at his home at 3239 Spears Road in Nashville, but he argues that the motion to suppress was insufficient for three reasons. First, he argues that counsel did not do enough to point out to the court the insufficiencies and ambiguities in the Affidavit that Detective Yannick Deslauriers presented to the state judge in support of the search warrant. This is especially problematic, Campbell contends, because this court did not hold an evidentiary

6

hearing on the motion to suppress and instead confined its analysis to the contents within the four corners of the Affidavit.[1]

Campbell identifies several insufficiencies and ambiguities he believes his counsel missed. For example, the first controlled drug buy described in the Affidavit was stale because no date was provided for that buy. The Affidavit also failed to make clear whether police officers conducted uninterrupted surveillance of a Monte Carlo as it traveled from Campbell's residence to the location of the confidential informants ("CIs"), where the CIs purchased drugs from Campbell. Further, counsel failed to argue that the Monte Carlo may have stopped at another location on the way to the meeting with the CIs in order to pick up cocaine for the drug transaction.

Additionally, Campbell contends, the motion failed to note with respect to the second controlled drug buy whether a "black male" who was observed stepping out of a Nissan Altima and entering Campbell's home was the same "black male" who thereafter left the house, got into the Nissan, and traveled to a meeting with the CIs where the CIs purchased drugs. Campbell suggests his counsel should have argued that the first black male may have been delivering cocaine to 3239 Spears Road for the residents' personal use, casual exchange, or immediate distribution to customers. Without specifying whether the two black males mentioned in the description of the second controlled buy were the same man, the Affidavit failed to establish probable cause to believe that the black male who was observed getting into the Nissan took any drugs from the house to the meeting with the CIs. Also, as with the Monte Carlo, the Affidavit

---

[1] This contention ignores the rule that, when determining whether an affidavit establishes probable cause for a search warrant, the court is constrained to consider only the content within "the four corners of the affidavit." United States v. Brooks, 594 F.3d 488, 492 (6th Cir. 2010).

7

did not make clear whether police officers conducted constant surveillance of the Nissan as it traveled from Campbell's residence to the CIs' location, where the CIs purchased drugs from Campbell. Counsel also did not argue that the Nissan may have stopped at another location to retrieve cocaine on the way to the meeting with the CIs.

Campbell asserts that Detective Deslauriers did not claim to have observed the black male carrying any item into either the Monte Carlo or the Altima. Moreover, the descriptions of the two alleged controlled purchases of cocaine set forth in the Affidavit failed to indicate the quantity of cocaine purchased by the CIs on each occasion and failed to indicate that the CIs had ever entered Campbell's house and observed drugs there or otherwise knew that drugs were stored there. As a result of these omissions, Campbell contends that his counsel should have argued that the cocaine was already inside the CIs' car or that the CIs purchased a small quantity of cocaine consistent with personal use that Campbell kept in his pocket and did not store in the house.

The second basis on which Campbell faults his counsel's motion to suppress is the failure to cite and rely on *United States v. Hython*, 443 F.3d 480 (6th Cir. 2006). He contends that reliance on this case would have resulted in an order granting the motion to suppress.

Finally, Campbell claims that the motion to suppress failed to challenge the execution of the search warrant. The Government should have been required to prove that law enforcement officers properly announced and identified themselves before they broke through the door to 3239 Spears Road.

In light of the above, Campbell alleges that his guilty plea was unknowing because he was not aware that his motion to suppress was denied due to his attorneys' failure to note factual

8

deficiencies in the Affidavit and their failure to present available arguments and legal authority. Had his trial counsel represented him effectively with a constitutionally adequate motion to suppress, he says, the motion would have been granted, and he would not have faced the untenable choice of proceeding to trial or entering a guilty plea.

In the motion to suppress that was filed, trial counsel challenged the Affidavit on three grounds. First, counsel argued that the Affidavit was based upon uncorroborated hearsay coming from the informants, whose reliability and credibility were not established within the four corners of the Affidavit. Second, counsel challenged the nexus between the drug transactions and the search of the residence. Third, counsel alleged the warrant was issued upon stale information and was not timely executed.

The court addressed and rejected each of these challenges to the search warrant based on the following: Detective Deslauriers is an experienced Metropolitan Nashville narcotics officer; he and other officers supervised the CIs who made controlled drug buys from Campbell on two occasions; the officers followed proper procedures for conducting controlled drug buys; on each occasion the CIs identified Campbell's residence and automobile, and the officers were able to verify Campbell's connection to the house and the Monte Carlo through record checks; the CIs made the controlled buy on each occasion after first contacting Campbell through a particular telephone number, after which a police officer watched as a black male left 3239 Spears Road and drove directly to the prearranged meeting location for the drug transaction, where the CIs purchased cocaine from Campbell; on each occasion, the CIs identified Campbell, a person known to them as "Tray," as the person from whom they purchased cocaine; the Affidavit recited that "[i]nformation and assistance provided by the CIs in the past has resulted in the

9

lawful recovery of illegal narcotics[]" and Detective Deslauriers agreed to reveal the names of the informants to the state judge in private; and the Affidavit was not stale under Sixth Circuit law because the second controlled drug buy had occurred within 72 hours of the request for a search warrant. (Docket No. 23, Memorandum and Order.)

The insufficiencies and ambiguities in the Affidavit that Campbell identifies in his present § 2255 motion are simply more specific arguments like those raised by his trial counsel. The court sees no reason to deem counsel's strategic decision to raise some arguments and not others as deficient performance. But even assuming that the present contentions should have been raised previously by counsel, Campbell has not shown a reasonable probability that such arguments would have changed the court's prior findings that the state judge had sufficient information to determine the reliability and credibility of each CI, that a sufficient nexus was shown between the controlled drug buys and Campbell's residence where the search was to take place, and that the Affidavit was not based on stale information and contained sufficient probable cause for issuance of the search warrant. *See Koras v. Robinson,* 123 Fed.Appx. 207, 212 (6th Cir. 2005) (noting that, in order to find reasonable probability that outcome of criminal proceeding was altered by counsel's performance, court must first conclude there was a reasonable probability that a motion to suppress would have been successful).

Trial counsel were not deficient in failing to rely on *Hython* because that case is clearly distinguishable from the instant case and would not have advanced Campbell's position. In *Hython,* 443 F.3d at 482-84, the Government did not contest the district court's legal conclusion that the search warrant issued for a residence was invalid due to staleness because the supporting affidavit failed to state the date of the one occasion on which the informant purchased drugs at

10

the residence. Rather, the only issue on appeal was whether the district court properly applied the *Leon* good-faith exception. *Id.* at 484.

In this case by contrast, the Affidavit stated that two controlled drug buys took place under very similar circumstances and that the second buy occurred within 72 hours before the search warrant was requested. The recency of the second drug buy obviated any potential staleness. *See United States v. Pinson*, 321 F.3d 558, 565 (6th Cir. 2003). Additionally, in this case there was no intermediary between the CIs and Campbell, as there was between the CI and the source in *Hython*. 443 F.3d at 482-84. In this case, police officers utilized two CIs who were familiar with a person known to them as "Tray" to buy cocaine directly from "Tray," and the drug buys were carefully controlled by law enforcement officers under proper procedures. This situation differs from that in *Hython*, where one drug transaction took place at some unknown time between an intermediary for the confidential informant and an unknown source inside a residence inhabited by several people. *Id.* at 482-83.

Finally, trial counsel's decision not to challenge the execution of the search warrant for failure to knock and announce had no negative effect on this case. Even assuming that trial counsel rendered deficient performance, Campbell cannot show prejudice from the deficient performance.

The facts presented at the guilty plea hearing–which Campbell admitted are true–would have been the same facts presented by the Government at a suppression hearing. ATF Special Agent Smith testified at the guilty plea hearing that, as officers approached 3239 Spears Road to execute the search warrant, they first secured the Nissan Altima parked outside the residence.[2] A

---

[2]The search warrant permitted a search of any persons and vehicles on the premises.

11

person known as RT was sitting in the passenger's side of the Nissan when officers approached. RT was taken into custody and *Mirandized*, after which he made statements implicating Campbell in drug trafficking and explaining that Campbell had just picked him up and brought him to the residence. The officers found drugs and cash in the Nissan. "The officers then entered the residence at 3239 Speers (sic) Road. Campbell's father was attempting to block the door as officers were making entry. Upon entering the door, Officer Deslauriers observed Campbell run from the bathroom." (Docket No. 46, Plea Hr'g Tr. at 15.) Officer Deslauriers ordered Campbell to the floor and continued into the bathroom. The toilet had been flushed recently; however, bags of marijuana and Ecstasy pills were still floating in the toilet bowl. Officer Deslauriers pulled the toilet from the floor to prevent the destruction of evidence. (*Id.*) Officer Deslauriers found approximately 53 grams of crack cocaine in the bathroom, and the search also turned up 6.8 grams of powder cocaine, marijuana, a loaded Glock pistol containing 15 rounds in the magazine, digital scales, cash and drug paraphernalia in the bedroom Campbell claimed as his after he received *Miranda* warnings. (*Id.* at 15-16.)

Given these same facts at a suppression hearing, the court would have found that the police were justified in entering the house, even if they did not knock and announce, because of the potential for danger evidenced by Campbell's father trying to block the door and in order to prevent the destruction of evidence. *See Richards v. Wisconsin*, 520 U.S. 385, 394 (1997) ("In order to justify a 'no-knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the

destruction of evidence.") Thus, Campbell cannot show prejudice arising from any deficient performance of his counsel in failing to attack the execution of the warrant.

Campbell also contends that his trial counsel were ineffective for failing to negotiate a plea agreement that reserved his right to appeal the denial of his suppression motion, that permitted him to request a sentence below 262 months, and that permitted the district judge to consider imposing a sentence partially or fully concurrent with his state sentence. Campbell claims that, but for his trial counsel's ineffectiveness, he would have had an opportunity to enter into a more favorable plea agreement.

To show prejudice under *Strickland* in a guilty plea case, Campbell must allege that, but for his counsel's ineffective assistance, he would not have entered a guilty plea and instead would have proceeded to trial. *See Hill,* 474 U.S. at 59. Nowhere in the amended § 2255 motion does Campbell allege with regard to the suppression or the plea negotiation issues that, but for his counsel's deficient performance, he would not have agreed to enter a guilty plea and would have proceeded to jury trial to face a potential life sentence if convicted. Further, Campbell does not suggest that his counsel failed to learn the facts of the case or failed to make a good-faith estimate of a likely sentence. *See Pough v. United States*, 442 F.3d 959, 966 (6th Cir. 2006). Rather, Campbell's guilty plea was a voluntary and intelligent choice among alternative courses of action open to him. *Hill*, 474 U.S. at 56; *Railey v. Webb*, 540 F.3d 393, 417 (6th Cir. 2008). Because Campbell does not even allege that he can show *Strickland* prejudice, the court need not examine in any detail his tenuous allegation that his counsel failed him by obtaining a Rule 11(c)(1)(C) plea agreement that took into account only one of his prior felony drug convictions

13

and resulted in a specific sentence of 262 months at the bottom of the advisory guideline range on Count Two.

Having carefully considered the parties' pleadings and the records of the prior criminal proceeding, the court determines that Campbell is not entitled to § 2255 relief. An evidentiary hearing is not warranted.

## **CONCLUSION**

For all of the reasons stated, Campbell's First Amended Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 (Docket No. 6), and his Motion To Establish Scheduling Order (Docket No. 23) will be DENIED. This case will be dismissed. No certificate of appealability will issue because Campbell has not made a substantial showing of the denial of a constitutional right. *See Slack v. Daniel*, 529 U.S. 473, 483 (2000).

An appropriate order will be entered.

ALETA A. TRAUGER
United States District Judge

14